IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

ARCHIE PRUITT,                      :
                                    :
    Plaintiff,                      :
                                    :
v.                                  :      CIVIL ACTION 07-0634-M
                                    :
MICHAEL J. ASTRUE,                  :
Commissioner of                     :
Social Security,                    :
                                    :
    Defendant.                      :

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. § 405(g), Plaintiff seeks judicial review of an adverse social security ruling which denied a claim for disability insurance benefits (Docs. 1, 13-14). The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 19). Oral argument was waived in this action (Doc. 21). Upon consideration of the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **REVERSED** and that this action be **REMANDED** for further action not inconsistent with the Orders of this Court.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Ser-

vices, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting* *Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Plaintiff was forty-nine years old, had completed an eighth-grade education (Tr. 586), and had previous work experience as a face man in the lumbar yard (Tr. 587). In claiming benefits, Plaintiff alleges disability due to degenerative disc disease (Doc. 13).

The Plaintiff filed a protective application for disability benefits on August 13, 2004 (Tr. 49-54). Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that although Pruitt was not capable of returning to his past relevant work, he could perform a full range of light work (Tr. 15-25). Plaintiff requested review of the hearing decision (Tr. 8-13) by the Appeals Council, but it was denied (Tr. 4-7).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence. Specifically, Pruitt alleges that the Appeals Council failed to properly consider records

submitted to it (Doc. 14).  Defendant has responded to—and denies—this claim (Doc. 15).  The medical evidence of record is as follows.

Records from Fulton Healthcare Institute show that Pruitt had prescription refills for Lotensin[1] on February 23 and May 26, 2004[2] (Tr. 132-33).  On June 24, 2004, he received another hypertension prescription refill and complained of mild, multiple joint pain (Tr. 130).

Pruitt was seen at the Coastal Neurological Institute on March 15, 2004, by Dr. Juan F. Ronderos, for complaints of back pain and tingling down the left arm; the doctor noted that the cervical pain was moderate and aggravated by activity (Tr. 160-61).  Ronderos saw Plaintiff again on May 26 (Tr. 159-60) and then admitted him to Providence Hospital on June 2-4, 2004, for a cervical fusion of a herniated disk at C6-7 (Tr. 119-28).  Dr. Ronderos indicated that Pruitt's postoperative diagnosis was severe cervical spondylosis.  The doctor saw Plaintiff post-operatively on June 11 at which time he noted muscle strength of 5/5 bilaterally in both upper and lower extremities; Ronderos said that Pruitt was "doing well" (Tr. 152-54).  On July 28, the doctor noted moderate right arm radicular features though

---

[1]Lotensin is used for the treatment of hypertension. *Physician's Desk Reference* 1870-72 (52nd ed. 1998).

[2]The Court notes that Plaintiff has asserted a disability onset date of February 23, 2004 (Tr. 51), so the Court will not summarize the medical evidence which precedes that date.

Plaintiff had full range of motion in lateral bending and extension of the cervical spine (Tr. 149-51).  On August 25, Ronderos noted that in spite of Pruitt's complaints of continued pain, he had shown improvement (Tr. 146-48).  An MRI and x-ray of the cervical spine on October 11, 2004, showed "advanced spondylitic disc changes at C5-6, C6-7, and C7-T1 with significant anterior spondylitic spurring.  There is reversal of the normal cervical lordosis which has improved when compared to the pre-operative exam" (Tr. 145).  Plaintiff continued to complain of pain in the left side of his back which radiated around to the rib cage (Tr. 142-44).

    Dr. Ronderos was deposed on September 9, 2005 and testified to his treatment of Pruitt for a degenerative disc, low back pain, and radiating neck pain (Tr. 228-71).  The doctor explained the anterior cervical discectomy and fusion at C6-7, which had been performed on June 2, 2004, as well as the follow-up treatment which had been provided.  Ronderos noted Plaintiff had had left arm radicular pain before surgery, but afterwards, the right arm started hurting him; the doctor characterized Pruitt as having "some pretty severe degenerative changes" (Tr. 264).  Ronderos stated it would probably be in Plaintiff's best interest to impose permanent restrictions on his physical activities, but he could not say for sure since he had not seen him since October 11, 2004; he further stated that Pruitt's condition would not

improve with time though "some therapies and treatments [] may improve parts of his condition" (Tr. 266).

On June 15, 2006, Plaintiff underwent a consultative physical examination by Dr. Mohammed A. Nayeem who noted Pruitt was "in no acute pain, no distress and no discomfort" (Tr. 273; *see generally* Tr. 272-81).  Nayeem noted that Plaintiff was "malingering heavily.  He would not move, would not cooperate, and even those parts of the body that he did not complain about or apparently does not have any problem, he would not move, in an attempt to impress the examiner that he is extremely sick" (*id.*).  The doctor noted that all movement in the cervical spine was restricted though it was normal in the dorsolumbar spine, shoulder, elbow and forearm, hip, knee, ankle, and wrist.  Nayeem noted that although Pruitt walked with a cane, he did not need it.  In conclusion, the doctor noted that "[o]ther than mild restriction of the neck movements, the musculoskeletal examination is unremarkable.  No gross impairment seen at the present time (Tr. 274).  It was Dr. Nayeem's opinion that Plaintiff was able to stand and sit for unlimited periods of time though he could walk for only an hour at a time and for only four hours during an eight-hour day.  He expressed the opinion that Pruitt could lift 35 pounds constantly, 40 pounds frequently, and fifty pounds occasionally and that he could carry 25 pounds constantly, 30 pounds frequently, and 35 pounds occasionally.

Nayeem thought that Plaintiff should kneel, crouch, and crawl occasionally but that he could balance and stoop on a frequent basis.

This is the conclusion of all of the evidence that was in the record at the time that the ALJ rendered his opinion.  The ALJ reviewed this evidence and found that although Pruitt was not capable of returning to his past relevant work, he could perform a full range of light work (Tr. 15-25).  In reaching this decision, the ALJ found that Plaintiff's testimony of his limitations and pain were not credible (Tr. 23), a finding not challenged in this action.  The ALJ also noted that there was "no evidence of any medical treatment of the claimant by a treating source since October, 2004;" the ALJ noted the lack of evidence several times (Tr. 23).

Plaintiff subsequently retained new counsel (Tr. 10) who filed a request for review of the hearing decision and submitted new evidence for the Appeals Council to consider.  The Appeals Council found no basis for changing the ALJ's decision (Tr. 4-7).

In this action, Pruitt claims that the Appeals Council failed to properly consider newly-submitted evidence.  Plaintiff refers to the medical evidence which can be found at transcript pages 286-580 (Doc. 14, pp. 2-4).  The Court notes that Defendant argues that the evidence should not be considered because it does not meet the requirements for consideration (Doc. 15, pp. 12-14).

It should be noted that "[a] reviewing court is limited to [the certified] record [of all of the evidence formally considered by the Secretary] in examining the evidence."  *Cherry v. Heckler*, 760 F.2d 1186, 1193 (11th Cir. 1985).  "[N]ew evidence first submitted to the Appeals Council is part of the administrative record that goes to the district court for review when the Appeals Council accepts the case for review as well as when the Council denies review."  *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1067 (11th Cir. 1994).  It is noted, though, that "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous."  *Ingram v. Commissioner of Social Security Administration*, 496 F.3d 1253, 1262 (11th Cir. 2007).

The new evidence, submitted for the Court's consideration, is as follows.  Pruitt was first seen by Neurologist Dr. Walid W. Freij on January 24, 2002 for neck and shoulder pain (Tr. 308-10).[3]  On March 25, 2005, an MRI was performed which demonstrated the following:  lumbar spondylosis with dehydrated disc and facet

---

[3]As set out in footnote two, Plaintiff has asserted a disability onset date of February 23, 2004 (Tr. 51), so it is the Court's intention to summarize only the medical evidence which follows that date.  Furthermore, the Court will not review all of the newly-submitted evidence herein; rather it will focus on that which it feels is most pertinent to the discussion at hand.
    This specific notation to Dr. Freij was made because it illustrates that he had seen Pruitt for a period of time, making him a treating physician, even though those first examinations pre-dated Plaintiff's asserted onset date.

hypertrophy at all levels; broad right paracentral and lateral extrusion L4-5 with significant right foraminal narrowing; and broad central protrusion L5-S1 with spinal stenosis and some mild encroachment upon both neural foramina (Tr. 291-92).  Nerve conduction studies were performed on December 11, 2006 which revealed the following:  evidence of moderate motor peripheral neuropathy of bilateral upper and lower extremities without evidence of denervation; evidence of a moderate right carpal tunnel syndrome and mild left carpal tunnel syndrome (Tr. 287-89).  On December 15, 2006, Dr. Freij completed a medical source statement in which he indicated his opinion that Plaintiff could sit for two hours, stand for one and walk for one hour at a time while able to sit for six, stand for two, and walk for two hours during an eight-hour day (Tr. 315-16).  The doctor further indicated that Pruitt could lift and carry up to twenty pounds occasionally and up to five pounds on a frequent basis.  The doctor also put forth the opinion that Plaintiff could use his right and left hands occasionally for simple grasping, pushing and pulling of arm controls, and fine manipulation; pushing and pulling of leg controls could be done occasionally.  Freij though that Plaintiff could reach overhead occasionally, but could never stoop, crouch, kneel, crawl, climb, or balance.  The doctor thought that Plaintiff's limitations, which had been in effect for over twenty months, would cause him to miss work more than

three times a month.  Dr. Freij also completed a pain form in which he indicated the following with regard to Pruitt's pain: that it would distract him for performing daily activities; that physical activity would increase his pain to the point of distracting him from his task; that pain medications would limit his effectiveness (Tr. 317-18).  The Neurologist further opined that Plaintiff would be totally restricted from doing his previous work, that there was little likelihood for improvement or that treatment would alter the level of his pain.

An MRI of the cervical spine was conducted by Coastal Neurological Institute on March 4, 2005, which revealed the following:  interval disc fusion at C6-7 without evidence of residual recurrent stenosis and interval decrease in size of the right paracentral extruded disc at C4-5 which minimally contacts the right ventral cord (Tr. 323).

After reviewing the newly-submitted evidence, the Court finds that remand is appropriate.  To make a determination of remand, "the claimant must establish that:  (1) there is new, noncumulative evidence; (2) the evidence is 'material,' that is, relevant and probative so that there is a reasonable possibility that it would change the administrative result, and (3) there is good cause for the failure to submit the evidence at the administrative level."  *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986).

The Court finds that most of the evidence is not new in that it pre-dates Pruitt's asserted onset date of disability. The evidence presented by Dr. Freij, however, is not new and is not repetitive of what already exists in the record. Dr. Freij's conclusions—especially with regard to Pruitt's pain—do not provide support for the ALJ's conclusions.

The Court finds that this evidence is material to the claims brought in this action. The new evidence, which is largely objective, is specifically relevant to the issue of whether Pruitt is capable of working. The Court finds that there is a reasonable possibility that this new evidence will change the ALJ's mind on this issue.

The Court also finds good cause for Plaintiff's failure to present this evidence earlier. Though there is no good explanation as to why Plaintiff's former attorney did not present the evidence (Doc. 14, pp. 1, 2), this Court does not wish to see the error compounded. Though Defendant has argued that it is inappropriate for Plaintiff to bring this evidence in the back door (*see* Doc. 15, p. 13), the Court finds that the ALJ directly put into issue the lack of evidence in this action. The Court notes that had Plaintiff's current attorney represented Plaintiff from the beginning and neglected to present all of the information to the ALJ for his review, this Court would not likely find good cause. However, that is not the case. After

weighing all of these considerations, the Court finds that the new evidence should be considered.

Based on review of the entire record, the Court finds that the Commissioner's decision, in light of the new evidence that has been presented for review, is not supported by substantial evidence.  Therefore, it is **ORDERED** that the action be **REVERSED** and **REMANDED** to the Social Security Administration for further administrative proceedings consistent with this opinion, to include, at a minimum, a supplemental hearing for the gathering of evidence as to whether Plaintiff can work.  Judgment will be entered by separate order.

DONE this 24th day of March, 2008.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE